IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CANTOL, INC.,

    Plaintiff,

v.                                                   Case No. 2:06cv86

LARRY W. McDANIEL

and

REBECCA LIEBIG,

    Defendants.

## ORDER & OPINION

This matter is before the Court on Defendants' Motions to Dismiss (Docs. 9 & 12). The Court held a hearing on April 21, 2006, and took both Motions under advisement. For the following reasons, Defendants' motions are **GRANTED** and Plaintiff's Complaint is **DISMISSED** with prejudice.

### I. Jurisdiction

Plaintiff is a New York corporation with its principle place of business in Pennsylvania; Defendants are both residents of Virginia; and Plaintiff alleges damages "exceeding $750,000" against each Defendant. (Doc. 1). The Court therefore has diversity jurisdiction over the subject matter of this suit. 28 U.S.C. § 1332(a)(1).

## II. Applicable Law

A court sitting in diversity applies the substantive law of the forum State. Erie R. Co. v. Tompkins, 304 U.S. 64, 78-79 (1938). In disputes over the validity of a contractual non-compete clause, Virginia courts apply the law of the state in which the contract was executed. Black v. Powers, --- S.E.2d ---, (Va. Ct. App., April 25, 2006) ("It is a long-standing rule in Virginia that the nature, validity and interpretation of contracts are governed by the law of the place where the contract was made.") (citing, inter alia, C.I.T. Corp. v. Guy, 170 Va. 16, 22 (1938)).[1] While the Employment Agreements before the Court do not include reference to where they were executed, (Doc. 1 Exs. A & B), both parties argued the validity of the covenants under Virginia law and it otherwise appears to the Court that both were executed in the Commonwealth of Virginia and. Therefore, the Court FINDS that Virginia law governs the validity of the Employment Agreements.

## III. Factual & Procedural Background

On July 30, 1986, and January 16, 2001, respectively, Defendant Larry W. McDaniel ("McDaniel") and Defendant Rebecca Liebig ("Liebig") were hired by Plaintiff (Doc. 1 Exs. A & B). Plaintiff "is primarily engaged in the business of selling chemical products[,] including

---

[1] None of the traditional exceptions to this rule are present here. The parties did not include a choice of law provision in either agreement. (Doc. 1 Exs. A & B); see, e.g., Tate v. Hain, 181 Va. 402, 410 (1943) (per curiam). There is no evidence that the parties otherwise intended for the law of a different jurisdiction to apply. See Guy at 22. The contract was fully performed in Virginia. See Arkla Mfg. Co. v. W. Va. Timber Co., 146 Va. 641, 650 (1926). Finally, as the contract was performed in Virginia, the Court need not evaluate whether or not the applied law of another forum is contrary to Virginia public policy. See Willard v. Aetna Cas. & Sur. Co., 213 Va. 481, 483 (1973).

disinfectants, sanitary supplies, soaps, detergents, cleaning supplies, insecticides, degreasing compounds, floor maintenance material, oils, and lubricants." (Doc. 1 at ¶ 6). Defendants were each assigned a sales territory consisting of specific military installations in the Tidewater region of Virginia.² Id. at ¶¶ 8, 16. Plaintiff alleges that its largest clients include the United States Department of Defense and various military installations. Id. at ¶ 6. Both Defendants entered into covenants not to compete ancillary to their Employment Agreements. Id. at Exs. A & B ¶ 7. On March 31, 2004, and December 31, 2004, respectively, McDaniel's and Liebig's employment was terminated. Id. at ¶¶ 11, 19.

Plaintiff specifically alleges that Defendants are in violation of ¶¶ 7(a), (c) & (d) of their Employment Agreements by selling the same or similar products listed above to various miliary installations "in direct competition" with Plaintiff. Id. at ¶¶ 9-10, 12, 13, 17-18, 20, 21. The relevant parts of Defendants' Employment Agreements state the following:

> "7.    The parties hereto agree that, in connection with his employment, the Salesman will become acquainted with the affairs of the Company, its sources of supply, its customers, the needs and requirements of its customers, and other trade information which the Company has acquired over a period of years at great costs and expense. Therefore, as an essential ingredient and consideration of this Agreement the said Salesman hereby agrees:
>
> > "a.    That he will not, during the terms of his employment nor for one (1) year immediately following the termination of his employment hereunder, directly or indirectly, alone, or in conjunction with others, as a principal, member, shareholder,

---

²McDaniel was assigned to represent Plaintiff and sell its products "in the territory described as follows: The following military installations in Tidewater, Virginia: NAS Oceana - Little Creek Amphibious Base - Fort Story Army Base - Dam Neck Training Center - ships at Nob (except aircraft carriers, submarines, and submarine tenders). In addition to this, the City of Virginia Beach." (Doc. 1 Ex. A ¶ 1) (punctuation and abbreviation as in original).
  Liebig was assigned to represent Plaintiff and sell its products "in the territory described as follows: <u>In the State of Virginia</u>: Langley Airforce Base, Fort Eustis Army Base, Little Creek Amphib Base, NAS Oceana Air Base, N.O.B. Base, NAS Air Base, Dam Neck Naval Base, Newport News Shipyard and Portsmouth Naval Shipyard - [not to include ships in yard], Craney Island Fuel Depo." (Doc. 1 Ex. B ¶ 1) (emphasis, punctuation, and abbreviation as in original).

> employee, agent, officer, director, or consultant of a partnership, corporation or any other entity or enterprise whatsoever, engage in a business competitive with that [of the Company within the territory described in Paragraph 1 as][3] the same may be changed by Agreement in writing between the parties hereto from time to time.
>
> * * *
>
> "c.   That at no time during the term of his employment, nor for one (1) year immediately following the termination of his employment hereunder, will he, alone or in conjunction with others, as a principal, member, shareholder, employee, agent, officer, director, or consultant of a partnership, corporation, or any other entity or enterprise whatsoever, call upon to sell or endeavor to sell to any of the customers and or patronage of the Company any products in competition with those sold by the Company during the period of his employment.
>
> "d.   That at no time during the term of this Contract, nor for one (1) year immediately following the termination of this Contract, will he, directly or indirectly, alone, or in conjunction with others, as a principal, member, shareholder, employee, agent, officer, director, or consultant of a partnership, corporation or any other entity or enterprise whatsoever, solicit, take away, or endeavor to take away any of the customers or patronage of the Company.
>
> * * *
>
> "It is agreed an understood between the parties that the breach of any of the foregoing covenants by the Salesman will cause the Company serious and irreparable injury, for which an award in damages would not be an adequate remedy, and the Company shall have the right to proceed, by way of injunction, to enjoin the Salesman from violating these covenants.
>
> "It is further agreed and understood between the parties that, in the event of any portion of this restrictive covenant shall be enforceable [sic[4]], the remaining portions thereof should be valid and enforceable.
>
> "The term 'Business competitive with that of the Company', for the purposes of this Agreement, shall be defined as a business engaged in the sale of disinfectants, sanitary supplies, soaps, detergents, cleaning supplies, insecticides, degreasing compounds, floor maintenance material, oils, lubricants, or any other products sold by the Salesman while employed hereunder and any equipment used in connection with any of the foregoing."

(Doc. 1 Exs. A & B ¶ 7; Doc. 1 at ¶¶ 9, 17 ). The Complaint also references other paragraphs in the Employment Agreements. See (Doc. 1 at ¶¶ 7, 8, 10, 15, 16, 18, 28, 29, 34 & 35).

---

[3] The bracketed text appears in McDaniel's agreement, (Doc. 1 Ex. A ¶ 7(a)), but is replaced, through scrivener's error, with the single word "if" in Liebig's Employment Agreement. (Doc. 1 Ex. B ¶ 7(a)) (Liebig agreed not to ". . . engage in a business competitive with that if the same may be changed by Agreement . . . ."). See note 10, infra.

[4] This scrivener's error appears in both Employee Agreements. (Doc. 1 Exs. A & B).

4

Plaintiff alleges that Defendants have formed a partnership together, named Lasar Chemicals, which sells these same or similar products to the same customers with which Defendants worked while employed by Plaintiff. Id. at ¶ 24-26. Plaintiff alleges that its lost sales, lost goodwill, and lost economic opportunity exceeding $750,000 as to each Defendant. Id. at ¶¶ 14, 26. Plaintiff also requests that the Court enjoin each Defendant for one year "from selling to any customers of [Plaintiff] any of the products identified in the Employment Agreement with [Plaintiff] for a period of one year from the termination of [Defendants'] employment." (Doc. 1 p.10). Plaintiff asks that the Court extend the injunction for the amount of time beyond the anniversary of Defendants' termination dates, to the extent that Defendants have violated the Employment Agreement. Id.

### IV. Legal Standards

#### A. Rule 12(b)(6) Motions to Dismiss

The purpose of a Rule 12(b)(6) motion to dismiss is to challenge the legal sufficiency of the Complaint. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994) (citing Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir.1991)). In evaluating motions made pursuant to Rule 12(b)(6), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See Venkatraman v. REI Systems, Inc., 417 F.3d 418, 420 (4th Cir. 2005) ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff.") (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court

may look to documents attached to the Complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See, e.g., Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

### B. The Proper Role of Federal Courts Ruling on State Substantive Law

The task of federal courts sitting in diversity is to "rule upon [Virginia] law as it exists and not to surmise or suggest its expansion." Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 n.3 (4th Cir. 2000) (citations and internal quotation marks omitted).

A federal court reviewing a Virginian covenant not to compete "need not determine the exact reach of the covenant in order to conclude that it is overbroad. The fact that its reach is so difficult to determine and may so easily exceed in effect the permissible reach renders the covenant overbroad." Power Distribution, Inc. v. Emergency Power Eng'g, Inc., 569 F. Supp. 54, 57-58 (E.D. Va. 1983).

### C. Virginia Covenants Not to Compete

The enforceability of a restrictive covenant is a matter of law. Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc., 270 Va. 246, 249 (2005). Restrictive covenants are subject "not only to the general rules of contract construction, but also legal principles specifically applicable to such covenants." Motion Control Sys., Inc. v. East, 262 Va. 33, 37 (2001). "Because such restrictive covenants are disfavored restraints on trade . . . any ambiguities in the contract will be construed in favor of the employee." Omniplex at 249. See Clinch Valley Physicians, Inc. v. Garcia, 243 Va. 286, 289 (1992) (same).[5] Such agreements

---

[5] See, e.g., Linville v. Servisoft of Virginia, Inc., 211 Va. 53, 55 (1970) (covenant not to "seek or accept employment with any other competitive business" strictly interpreted so as not to forbid the former employee from starting his own business, as sole proprietor, in competition

"have been upheld only when employees are prohibited from competing directly with the former employer or through employment with a direct competitor." Omniplex at 249.

Non-competition agreements are, therefore, enforced in the Commonwealth only when "the contract [1] is narrowly drawn to protect the employer's legitimate business interest, [2] is not unduly burdensome on the employee's ability to earn a living, and [3] is not against public policy." Omniplex at 249. These three factors are interrelated. Simmons v. Miller, 261 Va. 561, 581 (2001). Analysis of the three interrelated factors "requires consideration of the restriction in terms of function, geographic scope, and duration."[6] Simmons at 581. The considerations of function, geographic scope, and duration are not separate and distinct issues: a single consideration that is unreasonable may be reasonable as construed in light of the other two. See id.; Advanced Marine Enters., Inc. v. PRC, Inc., 256 Va. 106, 119 (1998) (eight-month duration informed the evaluation of both the geographic scope and function components of a restrictive covenant).

As an example of how one consideration informs the evaluation of another consideration, the Supreme Court of Virginia has never upheld a restrictive covenant, which was ancillary to an employer-employee relationship,[7] when the restrictive covenant could be applied to a geographic

---

with his former employer); Stoneman v. Wilson, 169 Va. 239, 246 (1937) (construing an ambiguous covenant "not to go in the Hardware business" as restraining the former employee only if he engaged in business in a managerial capacity, in which he served his former employer).

[6]There is no dispute in this matter regarding the reasonableness of the duration of the covenants, which is one (1) year for each paragraph in question. (Doc. 1 Exs. A & B ¶ 7).

[7]As compared to restrictive covenants that are ancillary to the sale of a business, Rash v. Hilb, Rogal & Hamilton Co., 251 Va. 281, 285 (1996) (requiring no geographic scope in such a case), or to restrictive covenants agreed to by parties with equal bargaining strength, Foti v. Cook, 220 Va. 800, 806 (1980) (restrictive covenant upheld, without geographic limitation, that

area in which the employee performed no function for the employer. See Simmons at 580-82 (restrictive covenant invalid where no geographic limitation was present, although the company only sold its product on the East coast of the United States); accord Omniplex at 249 (covenants are upheld only when they prevent the employee from engaging in direct competition with the former employer, or prohibit employment with the former employer's competitor).[8]

Similarly, the Virginia Supreme Court upholds covenants not to compete, which restrict the former employee's performance of functions for his new employer, only to the extent that the proscribed functions are the same functions as were performed for the former employer. See Omniplex at 250 (invalidating a prohibition on performing any service "for any other employer

---

was agreed to between senior partners in an accounting firm who were "privy to all the information gathered . . . in connection with clients serviced" by the former employer). See id. ("it is relevant to consider the parties involved, their respective positions, and the circumstances of the transaction"). See also Richardson v. Paxton Co., 203 Va. 790, 795 (1962) ("the permissible scope of restrictive covenants is more limited between employer and employee than between seller and buyer . . . .") (citation omitted).

[8]See also Advanced Marine at 118-19 (upholding a restriction limited to a fifty-mile radius around former employer's offices); New River Media Group, Inc. v. Knighton, 245 Va. 367, 368 (1993) (upholding a sixty-mile limitation as to a radio host, when sixty miles approximated the radio station's broadcast range); Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick, 239 Va. 369, 372-74 (1990) (upholding a restriction limited to the territories serviced by the former employee); Paramount Termite Control Co., Inc. v. Rector, 238 Va. 171, 175-76 (1989) (upholding a restriction limited to the county or counties [or city or cities] to which the former employee had been assigned in the past two years); Roanoke Eng'g Sales Co., Inc. v. Rosenbaum, 223 Va. 548, 553 (1982) (upholding a restriction as to all "territory covered by" the former employer, enforced against the employer's former treasurer, who had knowledge pertinent to all of the employer's branch offices); Meissel v. Finley, 198 Va. 577, 582-83 (1956) (upholding a restriction as to Norfolk, or within fifty miles thereof, as "practically coextensive with the business of the agency . . . ."); Worrie v. Boze, 191 Va. 916, 927 (1951) (upholding a restriction as to within twenty-five miles of franchised studios as "a limited and designated area from which many of [the former employer's] pupils were obtained."); and Stoneman v. Wilson, 169 Va. 239, 246 (1937) (restriction as to within five miles of town upheld as reasonable in light of, inter alia, the extent of the former employee's personal contact with his former employer's customers).

8

in a position supporting" the former employer's customer, regardless of whether or not such service would be in competition with the former employer); Modern Environments, Inc. v. Stinnett, 263 Va. 491, 495 (2002) (invalidating a restriction on employment in any capacity by a competing company); and Motion Control Sys., Inc. v. East, 262 Va. 33, 37-38 (2001) (invalidating a covenant providing that any business that made any kind of motor was "similar" to a business that made specialized, brushless motors).[9]

## V. Analysis

Turning to the Employment Agreements at issue, Plaintiff asserts that Defendant McDaniel[10] violated paragraph 7(a) of his agreement, (Doc. 1 Ex. A), and that both Defendants violated paragraphs 7(c) and 7(d) of their agreements, Id. at Exs. A & B.

The Court is of the opinion that the Supreme Court of Virginia, faced with these questions, would invalidate paragraph 7(a) as to Defendant McDaniel and invalidate paragraphs

---

[9] See also Simmons at 581 (invalidating a covenant restricting employment with "any business similar," when former employer imported only one specific type of cigar); Advanced Marine at 118-19 (upholding covenant whose prohibition was limited to solicitation of clients for whom former employee performed services while at former employer); New River at 368 (upholding restriction on engaging in business in competition with the employees former employer); Blue Ridge at 372-74 (upholding restriction on providing the same or similar service); Foti v. Cook at 806 (upholding ban on former partner performing external accounting service for clients of former employer); and Richardson v. Paxton Co. at 795 (invalidating a covenant that prohibits employment in any branch of marine or industrial supplies as overly broad, as it covers work in which the employee was not engaged).

[10] Plaintiff concedes that, "due to a scrivener's error," paragraph 7(a) "is unintelligible and without effect" as to Defendant Liebig. (Doc. 17 p.2 & p.2 n.1).

7(c) and 7(d) as to both Defendants.[11]

### A. Paragraph 7(a)

Paragraph 7(a) of McDaniel's employment agreement prohibits McDaniel from engaging in a "business competitive with" that of Plaintiff. (Doc. 1 Ex. A ¶ 7(a)). Paragraph 7(a) includes a reasonable restriction as to time and reasonably restricts the geographic scope of the covenant to the sales territory assigned to McDaniel. Id.

The Supreme Court of Virginia has upheld restrictive covenants that generically prohibit competition with a former employer. See New River Media Group at 368; Blue Ridge at 372-74. Therefore, the alleged scope of Plaintiff's business is relevant to the interpretation of paragraph 7(a): "[Plaintiff] is primarily engaged in the business of selling chemical products[,] including disinfectants, sanitary supplies, soaps, detergents, cleaning supplies, insecticides, degreasing compounds, floor maintenance material, oils, and lubricants." (Doc. 1 at ¶ 6).

However, the Employment Agreement defines "business competitive with that of the Company" as "a business engaged in the sale of disinfectants, sanitary supplies, soaps, detergents, cleaning supplies, insecticides, degreasing compounds, floor maintenance material, oils, lubricants, <u>or any other products sold by the Salesman while employed hereunder and any equipment used in connection with any of the foregoing</u>." (Doc. 1 Ex. A ¶ 7) (emphasis added).

Plaintiff has overstepped the permissible limits of covenants not to compete by defining competition to encompass more than the functions that McDaniel performed for Plaintiff. While

---

[11]It is appropriate for the Court to evaluate the validity of the covenants not to compete on Defendants' Motions to Dismiss, as both Defendants' Employment Agreements are attached to the complaint and are incorporated by reference throughout the complaint. (Doc. 1 at ¶¶ 7, 8, 9, 10, 15, 16, 17, 18, 28, 29, 34, 35, & Exs. A & B); Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

Plaintiff employed McDaniel "to sell the products of [Plaintiff]," (Doc. 1 ¶ 8; Ex. A ¶ 1) the covenant not to compete would prohibit McDaniel from selling equipment produced by companies other than Plaintiff, so long as such equipment was "used in connection with" Plaintiff's products, even if McDaniel never sold such equipment while employed by Plaintiff, or even if Plaintiff itself never produced or sold such equipment.

For example, Plaintiff's products require means of application, such as soap dispensers. There is nothing in the Employment Agreement to suggest that soap dispensers are not such "equipment." Paragraph 7(a) would prohibit McDaniel from selling soap dispensers (or floor buffers, or paper towels, or spray bottles, or mops, or brooms) to the "various military installations" for a period of one year, even if Plaintiff itself was not engaged in the production or sale of soap dispensers (or other cleaning equipment).

This example exposes the covenant as prohibiting much more beyond "business in competition with" that of Plaintiff. Therefore, paragraph 7(a) is invalid under Virginia law. See Omniplex at 249-50; Modern Environments at 495. Paragraph 7(a) is not narrowly drawn to protect to protect Plaintiff's legitimate business interests, as Plaintiff does not have a legitimate interest in restricting activities of former employees that are not in competition with Plaintiff; paragraph 7(a) is unduly burdensome on the employee's ability to earn a living, as demonstrated by the examples above; and enforcement of such an unreasonable restraint on trade would be against public policy.[12]

---

[12] Accord Roto-Die Co., Inc. v. Lesser, 899 F. Supp. 1515, 1520-22 (W.D. Va. 1995) (restrictive covenant held invalid under Virginia law when, inter alia, reference to "competitive business" was subsequently defined to encompass business activities beyond those engaged in by the former employer).

### A. Paragraphs 7(c) & 7(d)

Both Defendants agreed not to sell "any products in competition with those sold by [Plaintiff] during the period of [Defendant's] employment" to "any of the customers or patronage of [Plaintiff]." (Doc. 1 Exs. A & B ¶ 7(c)). Both Defendants also agreed not to "solicit, take away, or endeavor to take away any of the customers or patronage of [Plaintiff]." Id. at ¶ 7(d). While paragraphs 7(c) and 7(d) are reasonably limited in duration, neither paragraph is constrained by a geographic scope.

In the context of restrictive covenants entered ancillary to the creation of an employer-employee relationship, which was not incident to the sale of a business or agreed to by parties with equal bargaining power, the absence of geographic limitation renders the covenants invalid. See, e.g., Omniplex at 249; Simmons at 580-82 (2001). Furthermore, Defendants were not performing functions for Plaintiff across an area coterminous with all of Plaintiff's business. Instead, Plaintiff alleges that Defendants were assigned to sales territories limited to specified military installations in the Tidewater region of Virginia. Id. at ¶¶ 8, 16; see note 2, supra.

Therefore, Plaintiff's failure to limit the restrictive covenants in paragraphs 7(c) and 7(d) to the areas reasonably related to those in which Defendants functioned as employees of Plaintiff is fatal to the covenant's validity. Regardless of whether Plaintiff has legitimate business interests to protect, this expansive application of restrictive covenants is unduly burdensome on the employee's ability to earn a living and is against public policy.

### VI. Conclusion

It is not necessary for the Court to further articulate examples that render the covenants

illegitimate. Determining the exact reach of an unreasonable covenant is not required in order for the Court to hold the paragraphs invalid, when it is clear that the paragraphs "may so easily exceed in effect the permissible reach" the law would allow the covenants. Power Distribution, Inc. at 57-58.

Paragraphs 7(a), 7(c), and 7(d) might have been clarified to restrict the activities of which Plaintiff complains. However, restrictive covenants are interpreted through a different lense than the other components of employment contracts, Motion Control Systems at 37; any ambiguities therein must be construed in favor of the former employees, Omniplex at 249.

Granting Plaintiff leave to amend its Complaint would serve no purpose. Plaintiff's Complaint does not want of sufficient factual allegations; rather, the invalid underlying restrictive covenants, as drafted, render the Complaint insufficient. No amendment to the Complaint can change the offending language in the contracts.

For the above reasons, Defendant McDaniel's Motion to Dismiss (Doc. 9) and Defendant Liebig's Motion to Dismiss (Doc. 12) are both **GRANTED** and final judgment is hereby entered on behalf of both Defendants.

The Clerk is **REQUESTED** to mail a copy of this Order to counsel of record.

It is so **ORDERED**.

                                                        /s/
                                   HENRY COKE MORGAN, JR.
                                SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 28, 2006